J-A16006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| 1400 MARKET STREET, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| FOX FUNDING, LLC, FOX FUNDING PA LLC, MELO ENTERPRISES, LLC, DENNIS WASELUS AND ELSIE WASELUS, JOSEPH SINISI AND TWO RIVER COMMUNITY S/B/M THE TOWN BANK | |
| | |
| TWO RIVER COMMUNITY BANK S/B/M TO THE TOWN BANK | |
| v. | |
| FOX FUNDING PA LLC | |
| | |
| MELO ENTERPRISES, LLC | |
| v. | |
| FOX FUNDING LLC, 1400 MARKET STREET, LLC | |
| | |
| APPEAL OF: MELO ENTERPRISES, LLC | |
| | No. 3391 EDA 2014 |

Appeal from the Judgment Entered January 12, 2015
in the Court of Common Pleas of Carbon County
Civil Division at No.: 09-0006

BEFORE: LAZARUS, J., OLSON, J., and PLATT, J.*

---

* Retired Senior Judge assigned to the Superior Court.

J-A16006-15

MEMORANDUM BY PLATT, J.:                    **FILED AUGUST 12, 2015**

In this appeal, Appellant, Melo Enterprises, LLC, appeals from the judgment[1] entered in favor of Appellee, 1400 Market Street, LLC, in these consolidated actions, two in mortgage foreclosure, and one in mortgage reformation.  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the certified record and the trial court's opinions of February 15, 2012, September 10, 2013, November 10, 2014, and February 3, 2015.

> On October 21, 2005, James Harrison executed two mortgages in favor of The Town Bank on property located in Carbon County, Pennsylvania.  Both mortgages identified Fox Funding PA, LLC, a Pennsylvania limited liability company of which Harrison was the principal owner and managing agent, as the mortgagor.  This was a mistake.  Fox Funding PA was not the owner of the properties pledged as security; rather, Fox Funding LLC, a New Jersey limited liability company, also owned and controlled by Harrison, was the owner.  This fact has resulted in extensive litigation, including the instant proceedings for reformation asking that the name of the mortgagor in the larger of the two mortgages, that for $1,075,000.00, be corrected to Fox Funding, LLC, the actual owner of the property and intended mortgagor.

---

[1] In the caption of its brief Appellant purported to appeal from four different orders.  However, an appeal properly lies from the entry of judgment.  **See Jackson v. Kassab**, 812 A.2d 1233, 1233 n.1 (Pa. Super. 2002), *appeal denied*, 825 A.2d 1261 (Pa. 2003).   By order of January 6, 2015, we directed Appellant to praecipe for entry of judgment as required by Pennsylvania Rule of Appellate Procedure 301.  Appellant filed a praecipe on January 12, 2015.  In accordance with Pennsylvania Rule of Appellate Procedure 905(a), we treat the notice of appeal previously filed as filed after the entry of judgment.  We have corrected the caption.

- 2 -

*    *    *

On October 18, 2005, the Bank[a] extended a loan commitment to Fox Funding, LLC ("Fox Funding") for $1,300,000.00. The purpose of this loan was to finance Fox Funding's purchase and development of 168 acres of property located along the Maury Road in Penn Forest Township, Carbon County, Pennsylvania ("Property"). At the time, the Property was owned in part by Harry, Catherine, John and Linda Roscoe (the "Roscoe Parcels") and in part by Dennis and Elsie Waselus (the "Waselus Parcels"). The loan was to be secured by a valid first lien mortgage on the Property. Fox Funding accepted the loan terms as presented.

[a] The Town Bank later merged with Two River Community Bank whose name appears in the caption of this case. For purposes of this litigation, no meaningful distinction exists between the two. Hence, our reference to "the Bank" is inclusive of both The Town Bank and Two River Community Bank.

Between Fox Funding's acceptance of the loan commitment and the date of closing, the parties agreed to divide the loan proceeds into two different loan amounts to be secured by separate mortgages. The sum of $1,075,000.00 was to be secured by a first lien mortgage on the Property. The balance, $225,000.00, was to be secured by a second mortgage intended to be a third lien on the Waselus Parcels—subordinate to a purchase money mortgage held by the Waseluses—and a second lien on the Roscoe Parcels.

Closing on the loan was held at the offices of [the] Bank's counsel in Pennsylvania on October 21, 2005. At that time, two deeds were delivered for recording:  one for 132 acres from Dennis and Elsie Waselus (*i.e.*, the Waselus Parcels), and one for 36 acres from Harry, Catherine, John and Linda Roscoe (*i.e.*, the Roscoe Parcels). The grantee named in both deeds was Fox Funding.

At closing, Harrison signed two mortgages with the Bank as mortgagee—one for $1,075,000.00 (the "Bank Mortgage") and one for $225,000.00—both listing the Property as collateral.

- 3 -

The mortgage documents were provided by the Bank and prepared by its counsel. What Harrison did not realize was that each of the bank mortgages incorrectly identified the mortgagor as Fox Funding PA, LLC ("Fox Funding PA"), rather than the actual and intended mortgagor, Fox Funding, the owner of the Property. The notes secured by these two mortgages also mistakenly identified the borrower as Fox Funding PA, rather than Fox Funding.[b]

> [b] Fox Funding was formed by Harrison in 2004 for the purpose of acquiring and developing real estate in its name. Fox Funding PA was formed in 2005 as a construction firm to build the required improvements on property acquired by Fox Funding. Fox Funding PA was to make separate arrangements for financing its construction equipment with the Bank.

In addition to the two mortgages given to the Bank at closing, Harrison also signed a third mortgage to the Waseluses in the amount of $372,000.00, using as collateral the Property conveyed by them to Fox Funding. This mortgage correctly identified Fox Funding as the mortgagor. The Waselus Mortgage expressly stated on its face that it was:

> UNDER AND SUBJECT, in both lien and payment, to a construction and purchase loan mortgage to secure the payment of the principal sum of ONE MILLION SEVENTY-FIVE THOUSAND AND 00/100 ($1,075,000.00) DOLLARS given by [Fox Funding] to [the] Bank dated October 21, 2005, and intended to be recorded forthwith.

On October 24, 2005, the settlement documents were recorded in the Carbon County Recorder of Deeds Office in the following sequence at the record book and page numbers indicated:

> 1. Deed from the Roscoes to Fox Funding—Record Book 1385, at page 709;
>
> 2. Deed from the Waseluses to Fox Funding—Record Book 1385, at page 713;

3. Mortgage from Fox Funding PA to the Bank in the amount of $1,075,000.00—Record Book 1385, at page 720;[c]

4. Mortgage from Fox Funding to the Waseluses in the amount of $372,000.00—Record Book 1385, at page 731;

And

5. Mortgage from Fox Funding PA to the Bank in the amount of $225,000.00—Record Book 1385, at page 743.

> [c] Notwithstanding that this mortgage identified the mortgagor as Fox Funding PA, the mortgage was indexed against Fox Funding by the Recorder of Deeds.

The intended effect of this recording was to create a first lien mortgage on the Property in favor of the Bank in the amount of $1,075,000.00, a second lien mortgage on the Waselus Parcels in favor of the Waseluses in the amount of $372,000.00, and a second lien mortgage on the Roscoe Parcels and third lien mortgage on the Waselus Parcels in favor of the Bank in the amount of $225,000.00.[d]

> [d] On December 30, 2008, Fox Funding executed a mortgage encumbering multiple parcels, including the Property, in favor of Joseph Sinisi in the amount of $860,000.00. This mortgage was recorded on January 9, 2009, in the Carbon County Recorder of Deeds Office in Record Book 1739, at page 784.

Payments on the Bank Mortgage became delinquent as of August 31, 2008. Prior to this date, the mortgage was paid by Fox Funding. As a result of this default, the Bank filed a mortgage foreclosure complaint against Fox Funding PA, the named mortgagor in the Bank Mortgage, on January 2, 2009. This action is docketed to No. 09-0006 in the Carbon County Prothonotary's Office.

An *in rem* judgment was entered against Fox Funding PA in the amount of $1,126,126.55 on September 1, 2009, and a writ

of execution issued on September 10, 2009. All interested parties, including the Waseluses, were given notice of the execution proceedings. On November 6, 2009, the Property was sold at sheriff's sale to the Bank's assignee, 1400 Market Street, LLC, for costs.[e] A sheriff's deed for the Property dated November 30, 2009, with 1400 Market Street named as the grantee, was duly recorded in the Recorder of Deeds Office on December 7, 2009, in Book 1810, at page 652.

[e] All of the Bank's interest in the Bank Mortgage and underlying note was assigned to 1400 Market Street by Assignment of Note and Mortgage dated November 3, 2009, and recorded on November 4, 2009, in the Carbon County Recorder of Deeds Office in Record Book 1804, at Page 513. The Bank also assigned all of its interest in the September 1, 2009, judgment to 1400 Market Street the same date.

1400 Market Street is a wholly-owned subsidiary of Atlantic Central Bankers Bank ("ACBB"). ACBB was a one hundred percent participant with respect to the Bank Mortgage since closing.

1400 Market Street placed the Property for sale and an agreement was reached with Melo Enterprises, LLC ("Melo") to purchase the Property for $580,000.00. This sale did not occur after Melo questioned the ability of 1400 Market Street to convey good title since 1400 Market Street's source of title was that obtained at the sheriff's sale and Fox Funding PA, the party executed upon, never held title to the Property. Once aware of this concern and at the suggestion of Melo's counsel, 1400 Market Street requested and obtained from Fox Funding a quit-claim deed conveying title to 1400 Market Street.[f] This deed dated November 29, 2010, was recorded on December 27, 2010, and is filed in the Carbon County Recorder of Deeds Office in Record Book 1883, at page 847.

[f] This issue appears to have been first brought to 1400 Market Street's attention in a letter from Melo's counsel dated October 19, 2010. In this letter Melo's counsel suggested either a quit-claim deed from Fox Funding or reformation of the Bank Mortgage followed by a new foreclosure action on the reformed

- 6 -

mortgage as options for 1400 Market Street to gain title. Counsel's October 19, 2010 letter was followed by a second letter two days later advising that after further reflection foreclosure on the reformed mortgage would be necessary to discharge the Waselus and Sinisi mortgages.

Though the effect of this quit-claim deed was to transfer whatever title was retained by Fox Funding in the Property to 1400 Market Street, 1400 Market Street was nevertheless unable to convey good and marketable title to Melo due to the Waselus and Sinisi Mortgages, both constituting valid liens properly entered against Fox Funding as the mortgagor. Neither the Waselus nor Sinisi mortgages were discharged in the Bank's foreclosure on the Bank Mortgage as the mortgagor named therein, Fox Funding PA, never held title to the Property.

(Trial Court Opinion, 11/10/14, at 1-7) (record citations and one footnote omitted).

On December 3, 2010, Appellant filed a foreclosure action against Fox Funding, LLC docketed at Carbon County No. 10-3538. In 2011, the trial court granted Appellee's petition to intervene. Appellant and Appellee filed cross motions for summary judgment. On February 15, 2012, the trial court denied both motions.

On February 28, 2013, Appellant filed a petition to mark the judgment satisfied, released and discharged in the original foreclosure action at Carbon County No. 09-0006. On March 8, 2013, Appellee filed a petition to set aside the sheriff's sale in that matter. On July 9, 2013, the trial court denied Appellant's petition and granted Appellee's petition, setting aside the sheriff's sale.

On April 13, 2012, Appellee filed a mortgage reformation action docketed at Carbon County No. 12-0788 seeking to reform the sheriff's deed, or in the alternative, to vacate the sheriff's sale and reform the mortgage and note to reflect the correct owner. On April 15, 2013, Appellee filed a petition to consolidate the foreclosure action docketed at Carbon County No. 09-0006 with the reformation action docketed at Carbon County No. 12-0788, and with the foreclosure action filed by Appellant and docketed at Carbon County No. 10-3538. The trial court granted the petition on May 16, 2013.

A non-jury trial took place on March 7, 2014. At trial, Tom Katsigiannis, a representative of Two River Community Bank, testified that the intended borrower on the mortgage was Fox Funding. (**See** N.T. Trial, 3/07/14, at 27). He further testified that the loan documents named Fox Funding as the borrower. (**See id.** at 28). Katsigiannis stated there was a subsequent loan involving Fox Funding PA that was secured by construction equipment. (**See id.** at 29-30). Katsigiannis asserted that the use of Fox Funding PA in the mortgage documents rather than Fox Funding was a "typographical error" caused by the fact that there were two loans involving Fox Funding and one involving Fox Funding PA. (**Id.** at 30).

James Harrison, the principal owner of Fox Funding and Fox Funding PA stated that Fox Funding was formed for the purpose of buying real estate while Fox Funding, PA was formed for the purpose of construction. (**See id.**

at 45).  He testified that he paid all interest payments on the mortgage through Fox Funding.  (*See id.* at 46).  Harrison said that the mortgage should have been in the name of Fox Funding and he never intended to borrow money for real estate using Fox Funding PA.  (*See id.* at 46-47).  He asserted that he did not read the mortgage at the closing and thus did not notice that the wrong name was on the papers.  (*See id.* at 48-49).

Salvador Melo testified on behalf of Melo Enterprises.  (*See id.* at 68-85).  Melo stated he opposed the mortgage reformation because "[m]y interests come before yours."  (*Id.* at 80).  When asked how he would be prejudiced if the mortgage was reformed, he was unable to answer.  (*See id.* at 85).

Following trial, on November 10, 2014, the trial court entered an order and opinion directing that the first lien mortgage and the first lien note was reformed.  The order corrected the name of the mortgagee and borrower from Fox Funding Pa, LLC to Fox Funding, LLC.

On November 20, 2014, Appellant filed a motion seeking post-trial relief.  The trial court denied that motion on December 4, 2014.  On December 8, 2014, Appellant filed the instant, timely appeal.  On December 11, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal.  *See* Pa.R.A.P. 1925(b).  On December 29, 2014, Appellant filed a twelve-page timely Rule 1925(b) statement; on February 3, 2014, the trial court issued an opinion.  *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

A: Petition to Set Aside a Mortgage Foreclosure After Delivery of the Sheriff's Deed. Does the [trial c]ourt have authority in 2013 under the law to set aside a 2009 mortgage foreclosure two years after delivery of the Sheriff's deed?

B. PA Deficiency Judgment Act: Did the [trial c]ourt have authority to refuse to satisfy the mortgage from which a Sheriff's deed was issued in 2009 under the Pennsylvania Deficiency Judgment Act?

C. Statute of Limitations: Was the argument that the six-month statute of limitations applicable to [j]udicial [s]ales waived?

D. Jurisdiction Over a Mortgage Foreclosure: Did the [trial] court's finding that it "lacked jurisdiction" over a mortgage foreclosure case because the [p]laintiff [l]ender failed to secure a judgment against the true owner of the property described in the mortgage supported by law?

E. Mistake as Basis for Reforming a Mortgage: Whether the [l]ender has stated a case for reformation of a mortgage on the basis of a mistake when no mistake was proven?

F. Vacating of a Voluntary Deed in Lieu of Foreclosure Upon Request of the Lender[:] Whether the [trial c]ourt has authority under law to vacate a quit-claim deed accepted by the lender in lieu of foreclosure?

(Appellant's Brief, at unnumbered pages 11-13)[2] (unnecessary capitalization and underlining omitted).

_____

[2] Appellant's brief lacks a table of contents. *See* Pa.R.A.P. 2174(a). It begins numbering the pages with what Appellant believes to be page sixteen but by our count is actually page seventeen. Appellant then starts numbering the pages anew at the beginning of the argument section. In the interest of simplicity, we have renumbered the pages.

Initially, we note that Appellant's brief utterly fails to comply with the Rules of Appellate Procedure. Appellant's statement of jurisdiction does not comply with Rule 2114. (*See id.* at 5). The brief includes an "Order of Determination of Question" which is not contemplated by the Rules of Appellate Procedure. (*See id.* at 6). Its statement of the scope and standard of review is incorrect. (*See id.* at 7). The statement of the questions involved is in violation of Rule 2116(a) and is largely unintelligible. (*See id.* at 11-13). Its statement of the case does not comply with Rule 2117(a)(4). (*See id.* at 14-16). Its summary of the argument does not comply with Rule 2118. (*See id.* at 18-21). Further, Appellant's argument does not comply with Rule 2119(a) and is all but incoherent. (*See id.* at 22-69). Lastly, Appellant's brief is thirty-five pages longer than the page limit contained in Rule 2135(a), and Appellant has not filed the requisite certificate of compliance in accordance with that Rule. *See* Pa.R.A.P. 2135(a).

Therefore, because of Appellant's failure to adhere to the Rules of Appellate Procedure, this Court has the right to quash or dismiss Appellant's appeal pursuant to Rule 2101.[3] *See Commonwealth v. Sanford*, 445 A.2d

_____

[3] We would be totally justified in finding that Appellant has not preserved any issues for our review because its twelve-page 1925(b) statement does not comply with Rule 1925(b)(4)(ii) and (iv). *See Kanter v. Epstein*, 866 A.2d 394, 401 (Pa. Super. 2004), *appeal denied*, 880 A.2d 1239 (Pa. 2005), *cert. denied*, 546 U.S. 1092 (2006) (waiving prolix Rule 1925(b) statement
*(Footnote Continued Next Page)*

149, 150 (Pa. Super. 1982) ("When issues are not properly raised and developed in briefs, and when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof.") (citations omitted). Despite this, "in the interest of justice we address the arguments that can reasonably be discerned from this defective brief." **Commonwealth v. Lyons**, 833 A.2d 245, 252 (Pa. Super. 2003), *appeal denied*, 879 A.2d 782 (Pa. 2005).

In the first question listed in its statement of the question involved, Appellant asserts that the trial court erred in setting aside the sheriff's sale two years after delivery of the sheriff's deed. (**See** Appellant's Brief, at 11). However, it is nearly impossible to discern Appellant's argument in support of this issue. The argument begins with a fourteen-page section in which Appellant "reviews" numerous cases allegedly erroneously cited by the trial court in support of its holding, and then inserts a brief "comment" consisting of Appellant's interpretation of the holding of each case. (**See id.** at 22-35). Many of the cases discussed in detail by Appellant appear to be utterly irrelevant to his argument on this issue since the trial court simply cited them for general principles of law. (**See id.** at 23-30; Trial Ct. Op., 9/10/13, at 6-11).

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

where court determined that presentation of "outrageous number of issues" was deliberate attempt to circumvent purpose of Rule 1925); **see also Jiricko v. Geico Ins. Co.**, 947 A.2d 206, 210 (Pa. Super. 2008), *appeal denied*, 958 A.2d 1048 (Pa. 2008).

To the extent that we can ascertain Appellant's argument, it appears to claim that the trial court erred in setting aside the sheriff's sale because: (1) it could not find any relevant law in which the lender filed the petition to set aside the sheriff's sale; (2) the courts have never set aside a sheriff's sale after issuance of the deed; and (3) the petition to set aside the sheriff's sale was not filed within six months of the date of the issuance of the sheriff's deed. (**See** Appellant's Brief, at 41-42). We disagree.

Pennsylvania Rule of Civil Procedure 3132[4] provides:

**Setting Aside Sale**

> Upon petition of any party in interest before delivery of the personal property or of the sheriff's deed to real property, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances.

Pa.R.C.P. 3132. Pennsylvania Rule of Civil Procedure 3135 provides in pertinent part:

> (a) When real property is sold in execution and no petition to set aside the sale has been filed, the sheriff, at the expiration of twenty days but no later than 40 days after either the filing of the schedule of distribution or the execution sale if no schedule of distribution need be filed, shall execute and acknowledge before the prothonotary a deed to the property sold. The sheriff shall forthwith deliver the deed to the appropriate officers for recording and for registry if required. Confirmation of the sale by the court shall not be required.

---

[4]Pennsylvania Rule of Civil Procedure 3181(a)(8) makes Rule 3132 applicable to mortgage foreclosure actions. **See** Pa.R.C.P. 3181(a)(8).

Pa.R.C.P. 3135(a). This Court has stated that: "[t]aken together, Rules 3132 and 3135(a) make clear a party must raise a challenge to a sheriff's sale within a period of time after the sale but before the deed is delivered." ***Mortg. Elec. Reg. Sys. v. Ralich***, 982 A.2d 77, 80 (Pa. Super. 2009), *appeal denied*, 992 A.2d 889 (Pa. 2010). However, there is an exception to the time bar. "A sheriff's sale may be set aside after delivery of the sheriff's deed based on fraud or **lack of authority to make the sale**." ***Id.*** (citations omitted, emphasis added).

"The decision to set aside a sheriff's sale is within the sound discretion of the trial court[.]" ***Merrill Lynch Mortg. Capital v. Steele***, 859 A.2d 788, 791 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1199 (Pa. 2005). "[A] petition to set aside a sheriff's sale is based on equitable principles." ***Nat'l. Penn Bank v. Shaffer***, 672 A.2d 326, 329 (Pa. Super. 1996) (citation omitted). "The burden of proving circumstances warranting the exercise of the court's equitable powers is on the petitioner, and the request to set aside a sheriff's sale may be refused due to insufficient proof to support the allegations in the petition." ***Kaib v. Smith***, 684 A.2d 630, 631 (Pa. Super. 1996) (citation omitted). "This [C]ourt will not reverse the trial court's decision absent a clear abuse of discretion." ***Id.*** at 631-32.

Here, in a thorough and well-reasoned opinion, the trial court found that the sheriff lacked authority to make the sale because an indispensable party, the real owner of the property, was not a party to the mortgage

proceedings, rendering the judgment entered in those proceedings a legal nullity; thus, the trial court opinion properly disposes of this issue. (*See* Trial Ct. Op., 9/10/13, at 6-9) (finding, *inter alia*, that: (1) the real owner of property must be named as a defendant in mortgage foreclosure proceedings and is an indispensable party; (2) the real owner was not named as a defendant in the foreclosure proceeding; (3) the sheriff's deed cannot convey any better title than that owned by the judgment debtor, in this case it conveyed nothing; (4) therefore the sheriff lacked authority to make the sale). *See Wells Fargo Bank v. Lupori*, 8 A.3d 919, 922 (Pa. Super. 2010) (overruling trial court and granting petition to set aside sheriff's sale filed nearly eight months after delivery of deed where bank failed to allege in foreclosure complaint that it was owner of mortgage). Accordingly, we affirm the rejection of this issue based on the trial court's opinion. Appellant's first issue lacks merit.[5]

In its second issue, Appellant claims that the trial court erred in denying its petition to mark the judgment as satisfied pursuant to the

---

[5] We are utterly unpersuaded by Appellant's rambling argument that Fox Funding was not an indispensable party in the mortgage foreclosure proceeding. (*See* Appellant's Brief, at 23, 31). We note that Appellant also confuses the issue of lack of subject matter jurisdiction over an action with subject matter jurisdiction over a mortgage. (*See id.* at 34-35). Lastly, while Appellant acknowledges that a sheriff's sale can be set aside for lack of authority, it provides no legal support for its assertion that lack of authority only applies to cases where the property is located outside of Pennsylvania; a bankruptcy court stayed the sale; or cases involving a sale of maritime property. (*See id.* at 42).

Pennsylvania Deficiency Judgment Act, 42 Pa.C.S.A. § 8103. (*See* Appellant's Brief, at 45-50). We disagree.

"Preliminarily, we note that the scope of our review of deficiency judgment proceedings is limited to a determination of whether there is sufficient evidence to sustain the holding of the trial court, or whether the court committed reversible error of law." ***Commonwealth Bank & Trust Co., N.A. v. Hemsley***, 577 A.2d 627, 629 (Pa. Super. 1990), *appeal denied*, 583 A.2d 793 (Pa. 1990) (citations omitted). The Deficiency Judgment Act provides in relevant part:

> **(a) General rule.—**Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold. The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered. If the judgment was transferred from the county in which it was entered to the county where the execution sale was held, the judgment shall be deemed entered in the county in which the sale took place.

> \* \* \*

> **(d) Action in absence of petition.—**If the judgment creditor shall fail to present a petition to fix the fair market value of the real property sold within the time after the sale of such real property provided by section 5522 (relating to six months limitation), the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt, or any person interested **in any real estate which would, except for the provisions of this section, be bound by the judgment**, may file a petition, as a supplementary proceeding in the matter in which the judgment

- 16 -

was entered, in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limited by section 5522 to fix the fair market value of the property sold, whereupon the court, after notice as prescribed by general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

42 Pa.C.S.A. § 8103(a) and (d) (emphasis added).

The purpose of the Deficiency Judgment Act is "to protect debtors after their property was foreclosed. The act was aimed at shielding the mortgagor-debtor from the mortgagee who would purchase the mortgaged property for less than fair market value, usually for cost, and then reduce the debt only by the purchase price." **Fidelity Fed. Sav. And Loan Ass'n v. Capponi**, 684 A.2d 580, 586 (Pa. Super. 1996), *appeal denied*, 698 A.2d 67 (Pa. 1997) (citation omitted).

In the instant matter, the Deficiency Judgment Act is inapplicable. Here, as discussed above, the trial court correctly held that the judgment in foreclosure was a legal nullity because the Bank failed to name the property owner as a party in the proceeding. (**See** Trial Ct. Op., 9/10/13, at 7-8). Since the judgment was invalid, no real estate is bound by it and the Act is inapplicable. **See** 42 Pa.C.S.A. § 8103(d). Appellant's second issue lacks merit.

In its third issue, Appellant claims that the trial court erred in finding that it waived the claim that the six-month statute of limitations applicable to judicial sales, 42 Pa.C.S.A. § 5522(b)(5), applied in this matter. (**See** Appellant's Brief at 42-45, 48-50). We disagree.

The trial court found the issue waived, stating that Appellant "never raised [the issue] as a defense to [the] Bank's petition to set aside the sheriff's sale, nor was it raised at the argument held on July 9, 2013, or at any time to prior to the entry of our orders dated July 9, 2013." (Trial Ct. Op., 9/10/13, at 10) (footnote omitted). The trial court noted that the sole statute of limitations argument contained in Appellant's memorandum of law opposing the petition to set aside sheriff's sale was based upon Pennsylvania Rule of Civil Procedure 3132. (*See id.* at 10 n.6).[6] Appellant does not dispute that it did not argue this issue in its brief in response to the petition to set aside the sheriff's sale. (*See* Appellant's Brief, at 50). However, Appellant claims it raised the issue in its response including new matter. (*See id.* at 48). We disagree.

In its new matter, Appellant argues that the petition is untimely pursuant to Rule 3132. (*See* Response by Melo Enterprises, LLC to [the Bank's] petition to Set Aside Sheriff's Sale Including New Matter, 4/05/13, at unnumbered page 5 ¶¶ 62-63). Appellant never mentions 42 Pa.C.S.A. § 5522(b)(5), and its bald statement that sheriff's sales have a six-month

---

[6] We note that the certified record does not contain the notes of testimony from the July 9, 2013 argument. Further, Appellant's memorandum of law opposing the petition to set aside sheriff's sale is missing from the certified record. This Court has clearly stated that it is the appellant's responsibility to ensure that the certified record contains all documents necessary to ensure that this Court is able to review its claims. *See Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008); Pa.R.A.P. 1926; Pa.R.A.P. 1931.

statute of limitations (*see id.* at ¶ 68), particularly when combined with its failure to raise this issue in its brief or at oral argument, was insufficient to alert either the trial court or Appellee that Appellant was raising a defense based upon 42 Pa.C.S.A. § 5522(b)(5).

Appellant also contends that it did not waive the issue because it specifically raised it in its brief in support of its post-trial motion. (**See** Appellant's Brief, at 49). However, a new theory not raised during trial cannot be raised for the first time in a post-trial motion. **See Keffer v. Bob Nolan's Auto Serv., Inc.**, 59 A.3d 621, 630 (Pa. Super. 2012), *appeal denied*, 69 A.3d 602 (Pa. 2013).

Appellant also notes that it raised the issue in its Rule 1925(b) statement. (**See id.**). Moreover, as discussed above, Appellant waived this issue in the lower court; Appellant cannot preserve a claim not raised below by raising it in its Rule 1925(b) statement. **See Commonwealth v. Coleman**, 19 A.3d 1111, 1118 (Pa. Super. 2011) (issues raised for first time in Rule 1925(b) statement are waived). Therefore, we agree with the trial court that Appellant waived its third issue.

In its fourth claim, Appellant states that the trial court erred in finding it lacked jurisdiction over the mortgage foreclosure case because the plaintiff in the foreclosure proceedings did not secure a judgment against the property owner. (**See** Appellant's Brief, at 12). We are unable to address this issue.

Pennsylvania Rule of Appellate Procedure 2119 provides in pertinent part: "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). As we noted above, Appellant failed to comply with this Rule. Because of this, we are unable to locate this issue within its voluminous and discursive argument. On page fifty of its brief, Appellant ends its discussion of the third issue. (*See* Appellant's Brief, at 50). Appellant next has a subheading entitled "Part Two" and it immediately moves into a discussion of mutual mistake, which is the fifth issue listed in its statements of the questions involved. (*See id.* at 12, 50).

Further, it is unclear from the phrasing of Appellant's fourth issue whether it is arguing that the property owner was not an indispensable party or if it is arguing that even if the property owner was an indispensable party, the trial court still had jurisdiction over the foreclosure proceeding. (*See id.* at 12). If in fact Appellant failed to brief this issue, it is waived. *See Commonwealth v. Jones*, 815 A.2d 598, 604 n.3 (Pa. 2002) (claims raised in Statement of Questions Involved but not pursued in body of brief are waived). To the extent that Appellant may have subsumed its fourth issue into its first issue, (*see* Appellant's Brief, at 23, 31, 34-35), we have already addressed it.

In its fifth claim, Appellant alleges that the trial court erred in reforming the mortgage based on a mutual mistake. (**See id.** at 50-55).[7] Instead, it argues that the mistake was unilateral on the part of the bank. (**See id.** at 51). We disagree.

Our standard of review is as follows:

> [W]e note that our review of a non-jury trial is limited to determining whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law. In making this determination, we view the evidence and all inferences derived from the evidence, in the light most favorable to the victorious party. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent an error of law or abuse of discretion.

**Voracek v. Crown Castle USA Inc.**, 907 A.2d 1105, 1107 (Pa. Super. 2006), *appeal denied*, 919 A.2d 958 (Pa. 2007) (citations and quotation marks omitted). Because the issue of a mutual mistake raises a question of law, our scope of review is plenary. **See Hess v. Gebhard & Co.**, 808 A.2d 912, 920 (Pa. 2002) (citation omitted).

A reformation of a written instrument is a matter of equity. **See Evans v. Marks**, 218 A.2d 802, 805 (Pa. 1966). Courts sitting in equity "have the power to reform a written instrument where there has been a showing of fraud, accident or mistake." **Id.** (citation omitted). Further, "[a] mutual mistake is 1. A mistake in which each party misunderstands the

---

[7] Pages 56-60 of Appellant's brief are duplicates of pages 50-55.

other's intent. . . . 2. A mistake that is shared and relied on by both parties to a contract." ***Regions Mortg., Inc. v. Muthler***, 889 A.2d 39, 41 (Pa. Super. 2005) (citation and internal quotation marks omitted). "[E]vidence of a mistake must be clear and convincing." ***Jones v. Prudential Prop. and Cas. Ins. Co.***, 856 A.2d 838, 844 (Pa. Super. 2004), *appeal denied*, 876 A.2d 396 (Pa. 2005) (citation and internal quotation marks omitted). "The right to reformation of a deed in equity, if mutual mistakes appear, is unquestionable where the purpose is to correct the inaccurate description given therein, and make it conform to the intention of the parties." ***Krieger v. Rizzo***, 161 A. 483, 484 (Pa. Super. 1932) (citation omitted). "It is a well-known general rule that where parties have come to a mutual understanding as to the terms to be embodied in a proposed written contract or conveyance, and the writing executed is at variance with that understanding, it will be reformed to express their intention." ***Broida, in Own Right and For Use of Day v. Travelers' Ins. Co.***, 175 A. 492, 493-94 (Pa. 1934) (citations omitted).

The trial court aptly summarized the clear and convincing evidence in support of its finding of mutual mistake as follows:

> That Fox Funding was intended to be the mortgagor in the Bank Mortgage and that the parties acted as though Fox Funding was the borrower and mortgagor, is clear on the record before us. The initial loan commitment by the Bank dated October 18, 2005, and accepted by Fox Funding identified Fox Funding as the borrower and the purpose of the loan Fox Funding's acquisition and development of the Property. (Stipulated Facts, No. 15). This commitment was signed by Harrison as the managing

- 22 -

member of Fox Funding. The deeds delivered at closing named Fox Funding as the grantee. The mortgage given at closing to the Waseluses was properly executed in the name of Fox Funding and expressly stated that it was under and subject to a first mortgage being given that same date by Fox Funding to the Bank. Thereafter, the payments on the mortgage were made by Fox Funding.

At the March 7, 2014 hearing, Harrison testified the intended borrower and mortgagor was Fox Funding and he executed the mortgage believing he was signing in his capacity as manager for Fox Funding. This only makes sense since Fox Funding PA was neither the intended owner of the Property nor the intended borrower of the loan proceeds, as further evidenced on the settlement statement executed by the Waseluses and by Harrison on behalf of Fox Funding. (Plaintiff's Exhibit No. 3). It strains credulity to believe that the Bank would loan 1.3 Million Dollars, request the loan be secured by a mortgage on the Property being purchased, and then have the mortgage executed by an entity which had no interest in the Property.

(Trial Ct. Op., 11/10/14, at 11-12). We agree.

We have held that in determining whether a mutual mistake occurred, the court should consider, "the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." *Voracek*, *supra* at 1108 (citation omitted). In *Voracek*, an employee and the employer's hiring manager discussed and reviewed the terms of a severance provision on multiple occasions prior to the signing of an employment contract. *See id.* at 1106-07. However, the employment contract that the employee signed omitted the provision. *See id.* at 1107. Therefore, the employer refused to pay the severance package at termination. *See id.* At trial the employee and the hiring manager testified that the contract should have contained the provision and that neither

reviewed the contract prior to signing it. *See id.* at 1108-09. On appeal, we affirmed the trial court's finding of a mutual mistake. *See id.* at 1109.

We see very little difference between *Voracek* and the instant matter.[8] As the trial court stated, it was clear that the Bank and Harrison both intended that Fox Funding be the mortgagor and borrower for the loan with the Property as the collateral. (*See* Trial Ct. Op., 11/10/14, at 13-14). It is readily apparent from the record that, at the time of closing, both parties believed that Fox Funding was the designated mortgagor and borrower named in the documents. (*See* N.T. Trial, 3/07/14, at 30, 48-49). Thus, the trial court's finding that the mistake was a "drafting error" that was contrary to both parties' intent is supported by clear and convincing evidence. (Trial Ct. Op., 11/10/14, at 14).

This Court has long held that a trial court has the power to reform a document to correct a scrivener's error. *See Zurich Am. Ins. Co. v. O'Hanlon*, 968 A.2d 765, 773 (Pa. Super. 2009) (affirming trial court's

---

[8] We find Appellant's reliance on *Regions Mortgage*, *supra* to be misplaced. (*See* Appellant's Brief, at 53-54). In *Regions Mortgage*, a mortgage on entireties property named the husband as the sole mortgagor. The successor to the original mortgage sought reformation on the grounds of mutual mistake. *See Regions Mortg.*, *supra* at 40. However, this Court found that the predecessor had deliberately requested that wife's name be removed prior to closing. *See id.* at 40-42. Thus, we held that the appellant was not entitled to reformation because "bad decisions are not mistakes that entitle one to reform legal obligations." *Id.* at 42. There is simply no evidence in the instant matter that the switch in names from Fox Funding to Fox Funding PA was a unilateral decision from the Bank. (*See* N.T. Trial, 3/07/14, at 27-31, 47).

grant of reformation of insurance policy to correct scrivener's error); *DiMaio v. Musso*, 762 A.2d 363, 366 (Pa. Super. 2000), *appeal denied*, 785 A.2d 89 (Pa. 2001) (trial court erred in failing to reform deed to correct scrivener's error that depicted wrong parcel of land); *Armstrong Cnty. Bldg. & Loan Ass'n of Ford City v. Guffey*, 200 A. 160, 163 (Pa. Super. 1938) (granting reformation of deed to correct scrivener's error in lot numbers of certain lots intended to be conveyed). Here, the trial court's decision that there was a mutual mistake was supported by competent evidence, and it did not make an error of law in granting reformation. *See Voracek*, *supra* at 1109; *Zurich*, *supra* at 773. Appellant's fifth issue lacks merit.

In its sixth issue, Appellant claims that the trial court erred in vacating the quit-claim deed accepted by the Bank in lieu of foreclosure. (*See* Appellant's Brief, at 61-65). Specifically, Appellant appears to allege that the reformation of the mortgage resulted in a situation where Appellee owns the mortgage as a result of the Bank's assignment and is also the title owner of the Property because of Fox Funding's quit-claim deed. (*See id.* at 61-62). Appellant claims that this will result in the merger of the mortgage lien into Appellee's fee. (*See id.*). Appellant has waived this issue.

As discussed above, we review the decision of a trial court after a non-jury trial to see if its findings are supported by competent evidence and whether it committed an error of law. *See Voracek*, *supra* at 1107.

- 25 -

Further, "[d]ischarge of a mortgage obligation by merger of the legal and equitable titles depends upon the intention of the mortgagor and mortgagee at the time of the alleged merger." ***PNC Bank, Nat'l Assn. v. Balsamo***, 634 A.2d 645, 656 (Pa. Super. 1993), *appeal denied*, 648 A.2d 790 (Pa. 1994) (citations omitted).

Here, Appellant's argument is undeveloped. Its merger argument consists of a single cite to boilerplate law. (***See*** Appellant's Brief, at 62). Further Appellant's argument contains no citations to the record that would support its contention that the intent of the parties at the time they entered into the quit-claim deed was to merge the mortgage into the deed. (***See id.*** at 61-65).

Appellant's argument that the quit-claim deed is, in reality, a deed in lieu of foreclosure is equally underdeveloped. The deed is plainly titled "Quit-Claim Deed" and does not contain any language that would indicate that the parties intended it to be a deed in lieu of foreclosure. (***See*** Quit-Claim Deed, 11/29/10, at 1-6). Appellant does not point to any evidence of record to support its speculation that the quit-claim deed is really a deed in lieu of foreclosure.

It is long-settled that failure to argue and to cite any authority supporting the argument constitutes a waiver of the issue on appeal. ***See Jones v. Jones***, 878 A.2d 86, 90 (Pa. Super. 2005). This Court will not act as counsel and will not develop arguments on behalf of an appellant. ***See***

***Bombar v. West Am. Ins. Co.***, 932 A.2d 78, 94 (Pa. Super. 2007). When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we can dismiss the appeal entirely or find certain issues to be waived. ***See*** Pa.R.A.P. 2101. Because Appellant has failed to develop its sixth issue, it waived it. ***See id.***; ***see also Bombar***, ***supra*** at 94; ***Jones***, ***supra*** at 90.

For the reasons discussed above, we hold that the issues raised by Appellant are either waived or have no merit. Accordingly, we affirm.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/12/2015

A16 006-15

IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA

CIVIL ACTION

TWO RIVER COMMUNITY BANK, Successor :
by merger to THE TOWN BANK, :
        Plaintiff :
        vs. :  NO. 09-0006
FOX FUNDING PA, LLC, :
        Defendant :
FOX FUNDING, LLC; :
DENNIS AND ELSIE WASELUS; :
JOSEPH F. SINISI; :
MELO ENTERPRISES, LLC; AND :
AND 1400 MARKET STREET, LLC, :
        Respondents .

Scott M. Rothman, Esquire     Counsel for Two River Community Bank
                           and 1400 Market Street, LLC
Anthony Roberti, Esquire     Counsel for Melo Enterprises, LLC
Fox Funding PA, LLC          Pro se
Fox Funding, LLC             Pro se
Dennis and Elsie Waselus     Pro se
Joseph F. Sinisi           Pro se

MEMORANDUM OPINION

Nanovic, P.J. - September 10, 2013

    Melo Enterprises, LLC ("Melo") has appealed two orders entered by us on July 9, 2013: one setting aside a sheriff's sale which occurred on November 6, 2009, the other denying Melo's request to satisfy the underlying judgment upon which the sale was based.

    This opinion is filed in accordance with Pa.R.A.P. 1925(a).

PROCEDURAL AND FACTUAL BACKGROUND

    This is a mortgage foreclosure action. The mortgage foreclosed upon (the "Bank Mortgage") was executed by Fox Funding PA, LLC ("Mortgagor"), a Pennsylvania limited liability

Appendix "B"

1

company, on October 21, 2005, in favor of The Town Bank ("Bank"), which later merged with Two River Community Bank. Upon default in payment of the indebtedness secured by the mortgage, an action in mortgage foreclosure was commenced by Bank against Mortgagor on January 2, 2009. Pursuant to Pa.R.C.P. 2352(a), Two River Community Bank, as successor by merger to The Town Bank, was substituted as plaintiff on April 13, 2009.[1]

On August 31, 2009, Bank's motion for judgment on the pleadings was granted and a judgment *in rem* was entered in favor of Bank and against Mortgagor in the amount of $1,126,126.55, plus interest, costs of suit, and reasonable attorney fees in an amount to be determined by the court. Upon praecipe, a writ of execution to satisfy this judgment was issued on September 10, 2009, against Mortgagor with respect to the property listed as the collateral in the Bank Mortgage (the "Mortgaged Property"). A sheriff's sale of this property was held on November 6, 2009. The purchaser was 1400 Market Street, LLC, to whose use Bank's judgment, and its rights under the Bank Mortgage and underlying note, were assigned immediately prior to the sheriff's sale. On November 30, 2009, a sheriff's deed for the Mortgaged Property issued to 1400 Market Street and was duly recorded in the Carbon

---

[1] Because Two River Community Bank's interest in the mortgage is the same as that previously held by The Town Bank, for ease of reference the term Bank as used in this opinion also includes The Town Bank's successor, Two River Community Bank.

Appendix "B"

2

County Recorder of Deeds Office on December 7, 2009, in Carbon County Document Book 1810, page 652.

It is undisputed that Mortgagor never held title to or an ownership interest in the Mortgaged Property, either at the time the Bank Mortgage was executed or later. Instead, the real owner of the property was Fox Funding, LLC ("Owner"), a New Jersey limited liability company, separate and distinct from Mortgagor, although both are allegedly owned or controlled by the same person, James P. Harrison, who is also the managing member for both. In separate proceedings docketed in this court at No. 12-0788, 1400 Market Street seeks to rescind and reform the Bank Mortgage and the note it secures, both executed by Mr. Harrison as the managing member of Mortgagor at a settlement held on October 21, 2005, to reflect the averred true and intended borrower, Owner, to whom title to the Mortgaged Property was transferred at the same time.

At the settlement held on October 21, 2005, two deeds conveying title to the Mortgaged Property were delivered to Owner: one from Harry, Catherine, John, and Linda Roscoe for thirty-six acres (the "Roscoe Parcels") and one from Dennis and Elsie Waselus for one hundred thirty-two acres (the "Waselus Parcels").[2] As part of the purchase price for their property,

---

[2] This was in accordance with a $1,300,000.00 loan commitment from Bank to Owner dated October 13, 2005, pursuant to which Owner was to acquire title to the Roscoe and Waselus Parcels which in turn were to be used by Owner as

Appendix "B"

3

the Waseluses took back a mortgage from Owner in the face amount of $372,000.00. This mortgage (the "Waselus Mortgage"), which correctly identified Owner as the borrower, and was executed by Mr. Harrison in his capacity as the managing member of Owner, expressly stated that it was

> UNDER AND SUBJECT, in both lien and payment, to a construction and purchase loan mortgage to secure the payment of the principle sum of ONE MILLION SEVENTY-FIVE THOUSAND AND 00/100 ($1,075,000.00) DOLLARS given by [Owner] to Town Bank dated October 21, 2005, and intended to be recorded forthwith.[3]

Nevertheless, because the Bank Mortgage named and was executed by Mortgagor, as the mortgagor therein, rather than by Owner, to whom title to both the Roscoe and Waselus Parcels (the mortgaged premises described in the Bank Mortgage) had been conveyed, the mortgage was in fact executed by a party which had no record or real interest in the Mortgaged Premises.

On November 8, 2010, Melo purchased the Waselus Mortgage for $1,000.00. At the time, the unpaid principal balance owed was in excess of $360,000.00. Not only did Melo know at the time of

---

collateral for a first lien mortgage to Bank to secure payment of the loan. Between the date of execution of the loan commitment and the date of closing, it was agreed to break the loan into two separate amounts: $1,075,000.00 to be secured by the first lien mortgage, and $225,000.00 to be secured by a second mortgage existing as a second lien on the Roscoe Parcels and a third lien on the Waselus Parcels.

[3] Joseph Sinisi, whose name appears in the caption of this case, is a junior mortgage holder to whom Owner granted a mortgage on or about December 30, 2008. Mr. Sinisi's mortgage describes multiple parcels, in addition to those identified in the Bank Mortgage, as securing the debt owed to him. The Sinisi Mortgage expressly references the Bank and Waselus Mortgages, and ostensibly constitutes a fourth lien mortgage on the Waselus parcels. *See* Petition to Set Aside Sheriff's Sale, paragraphs 19-22. The existence of the Sinisi mortgage does not affect our analysis of the issues under appeal.

Appendix "B"

4

purchase that the Waselus Mortgage was intended to be a second mortgage to the Bank's first mortgage in the amount of $1,075,000.00, Melo also knew that the title 1400 Market Street acquired to the Mortgaged Premises by virtue of the November 30, 2009, sheriff's deed was subject to challenge since the Bank Mortgage was not executed by the true property owner.[4]

On December 3, 2010, Melo commenced a foreclosure action against Owner docketed to No. 10-3538 in this court seeking to foreclose on the Waselus Mortgage. 1400 Market Street was permitted to intervene. In response to 1400 Market Street's contention that the Waselus Mortgage was discharged in the foreclosure proceedings on the Bank Mortgage, Melo argued that Mortgagor, as a stranger to title, had neither the power nor the authority to grant a mortgage on the Waselus Parcels, and that the sheriff's deed which issued upon execution could convey no better title to this property than that held by Mortgagor. We accepted Melo's argument and held that the Waselus Mortgage was not extinguished by the sheriff's sale, but remained as a valid, enforceable lien. *See* Melo Enterprises v. Fox Funding, 18 Carbon Co.L.J. 595 (Memorandum Opinion of February 15, 2012).

---

[4] In this context, it is worth noting that "[a] petition to set aside a sheriff's sale invokes the equitable powers of the trial court." Jefferson Bank v. Newton Associates, 686 A.2d 834, 838 (Pa.Super. 1996). Though Bank repeatedly raises whether Melo should be barred by the doctrine of unclean hands from opposing its petition, we found it unnecessary to reach this issue in our resolution of the petition and Melo's request to have the mortgage judgment marked satisfied.

On February 28, 2013, Melo filed its petition in these proceedings to have Bank's August 31, 2009, foreclosure judgment marked satisfied under the Deficiency Judgment Act, 42 Pa.C.S.A. § 8103. On March 8, 2013, Bank filed its petition seeking to set aside the November 6, 2009, sheriff's sale. By order dated July 9, 2013, we set aside the sheriff's sale held on November 6, 2009, and vacated the *in rem* judgment taken on August 31, 2009. In a separate order of the same date, we also denied Melo's petition to mark the judgment satisfied. Both orders are the subject of Melo's appeal taken on August 7, 2013.

## DISCUSSION

In resolving both appeals,[5] we believe the controlling question is whether the real owner of property is an indispensable party to a mortgage foreclosure proceeding. An action in mortgage foreclosure is strictly an *in rem* proceeding based on the mortgage. Newtown Village Partnership v. Kimmel, 621 A.2d 1036, 1037 (Pa.Super. 1993). In consequence, the Pennsylvania Rules of Civil Procedure require the real owner of property, as well as the mortgagor - unless the plaintiff releases such person from liability for the debt secured by the mortgage - be named as defendants. Pa.R.C.P. No. 1144.

---

[5] Melo filed one Notice of Appeal appealing two separate orders. This practice is at best frowned upon, and, at worst, may result in one or more appeals being quashed. Sulkava v. Glaston Finland Oy, 54 A.3d 884, 888 (Pa.Super. 2012); M.R. Mikkilineni v. Amwest Surety Ins. Co., 919 A.2d 306, 311 (Pa. Cmwlth. 2007).

An indispensable party is one whose rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. Campanaro v. Pennsylvania Elec. Co., 656 A.2d 491, 493 (Pa.Super. 1995) (quoting Sprague v. Casey, 550 A.2d 184, 189 (Pa. 1988)). "Unless all indispensable parties are made parties to an action, a court is powerless to grant relief. Thus, the absence of such a party goes absolutely to the court's jurisdiction." Id. "The absence of an indispensable party renders any decree or order in the matter void for lack of jurisdiction." Hubert v. Greenwald, 743 A.2d 977, 980 (Pa.Super. 1999).

As a matter of law, a real property owner cannot be deprived of his property in an action of mortgage foreclosure in which he is not a party. Commercial Banking Corp. v. Culp, 443 A.2d 1154, 1156 (Pa.Super. 1982). As the real owner of the property subject to this mortgage foreclosure, Owner (Fox Funding LLC) was a necessary and indispensable party to this action. Biernacki v. Redevelopment Authority of Wilkes-Barre, 379 A.2d 1366 (Pa.Cmwlth. 1977) (owner of real estate is an indispensable party to proceedings seeking transfer of title to the property to another); Hart v. O'Malley, 647 A.2d 542, 549 (Pa.Super. 1994) ("Appellate courts have consistently held that property owners are indispensable parties in lawsuits concerning the owners' property rights."). Without Owner's joinder, no relief was possible since an action in mortgage foreclosure is in rem and binds only the mortgaged property. In consequence, Bank's failure to name Owner as a defendant, deprived

this court of jurisdiction to act *vis-à-vis* the Mortgaged Premises and renders the judgment entered on August 31, 2009, a legal nullity. This error was compounded when execution was attempted on the judgment.

In our February 15, 2012, Memorandum Opinion, we wrote:

> In its simplest terms, the Bank mortgage was not executed by either the real or record owner of the property. Further, the *in rem* judgment which the Bank sought to obtain in its mortgage foreclosure action against Fox Funding PA, LLC was against an entity which never held an interest in the property. It necessarily follows that the sheriff's deed which issued upon execution on this judgment and which purported to convey such title in the property as was held by Fox Funding PA, LLC to Buyer, in reality conveyed nothing. A sheriff's deed can convey no better title than that held by the judgment debtor. Tonge v. Radford, 156 A. 814, 815 (Pa.Super. 1931) ("A purchaser of land at sheriff's sale buys at his own risk and acquires only the interest which the defendant in the execution had, and no more.") (construing Weidler v. Farmer's Bank of Lancaster, 11 Serg. & Rawle 134 (Pa. 1823)).

Melo Enterprises v. Fox Funding, 18 Carbon Co.L.J. 595, 599 (2012). This is equally relevant to the present discussion.

Because the judgment upon which the sheriff's execution emanated was a nullity and because the sheriff was without authority to convey any interest in real estate in an *in rem* proceeding in which the defendant/debtor never owned or held an interest, our order setting aside the sheriff's sale and vacating the *in rem* judgment was appropriate. Mortgage Electronic Registration Systems, Inc. v. Ralich, 982 A.2d 77, 80 (Pa.Super. 2009) ("A sheriff's sale may be set aside after delivery of the

Appendix "B"

8

sheriff's deed based on fraud and lack of authority to make the sale."); *see also* <u>Workingmen's Sav. and Loan Ass'n v. Kestner</u>, 652 A.2d 327, 328 (Pa.Super. 1994) ("After delivery of a sheriff's deed to a purchaser, the only attacks possible on the sheriff's sale are those based on fraud which vitiates the transaction or a lack of authority to make the sale.").

Our order denying Melo's petition to mark the judgment satisfied is a necessary corollary of the foregoing. Having determined that this court was without jurisdiction to act in a mortgage foreclosure action in which the real owner of the property was not joined, that the judgment entered in that action was void *ab initio*, and that the sheriff's deed which thereafter issued conveyed nothing, to argue, as Melo does, that the judgment should be satisfied, defies logic. How legally can a judgment be satisfied which never validly existed and which was never paid?

To the extent Melo relies upon the Deficiency Judgment Act in requesting satisfaction, Melo's reliance is misplaced. That Act conditions the filing of a petition for a deficiency judgment, as well as a petition to satisfy a judgment after execution thereon, upon the sale of the real property executed upon, either directly or indirectly, to the judgment creditor. 42 Pa.C.S.A. § 8103(a),(d). Here, as already stated, neither Bank nor 1400 Market Street acquired anything in the sheriff's sale held on November 6, 2009, much less any title or ownership interest in the property being foreclosed upon. Under these circumstances, where no valid

Appendix "B"

9

*in rem* judgment existed and nothing was conveyed upon execution, the Deficiency Judgment Act has no applicability.

To the extent Melo argues Bank's petition to set aside the sheriff's sale is barred by the six-month statute of limitations applicable to an action or proceeding to set aside a judicial sale of property, 42 Pa.C.S.A. § 5522(b)(5), the issue has been waived. This issue was never raised by Melo as a defense to Bank's petition to set aside the sheriff's sale, nor was it raised at the argument held on July 9, 2013, or at any time prior to the entry of our orders dated July 9, 2013.[6] Moreover, and perhaps more importantly, it is intellectually dishonest to argue that a legal proceeding which is void at its inception for lack of subject matter jurisdiction can somehow be magically transformed from one having no effect to an effect which is decisive simply by the passage of time and the failure to make an earlier challenge to its validity. Biernacki, 379 at 1368. ("No court may grant relief in the absence of an indispensable party."). Perhaps the easier answer, is to simply state that because no valid judicial sale of property

---

[6] To the extent Melo argued the petition to set aside the sheriff's sale was untimely, it did so on the basis of Pa.R.C.P. No. 3132 which provides:
> Upon petition of any party in interest *before delivery* of the personal property or *of the sheriff's deed to real property*, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances.

(emphasis added). *See* Melo's Memorandum of Law Opposing Plaintiff's Petition to Set Aside Sheriff's Sale filed on April 5, 2013. While it is true that the delivery of a sheriff's deed generally divests the court of the authority to set aside a sheriff's sale, as noted in the Ralich and Kestner cases cited in the body of this opinion, an exception to this limitation is where the sheriff was without the authority to make the sale.

occurred on November 6, 2009, the period of limitations provided in 42 Pa.C.S.A. § 5522(b)(5) is inapplicable to these proceedings.

## CONCLUSION

It is often said that bad facts make bad law. Equally true is that unusual facts often make the application of general principles of law flawed. In this case, what simple common sense and fairness dictate has been unduly complicated by a multitude of errors, beginning with the preparation and execution of the Bank Mortgage, and exacerbated by the opportunistic efforts of Melo to take advantage of what appears, at its most basic level, to be a scrivener's error. In the end, we believe the rulings we have made comport with the law and fairly adjust the rights of the parties.

BY THE COURT:

_____ P.J.